UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL ELLIOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 6:18-CV-92-REW |
| | ) | |
| AARON SMITH, Warden, | ) | OPINION & ORDER |
| | ) | |
| Respondent. | ) | |

\* \* \* \* \* \* \* \* \* \*

On March 19, 2018,[1] Petitioner, Michael Elliott, filed a *pro se* Petition for a Writ

of Habeas Corpus under 28 U.S.C. § 2254. DE 1 (Petition). The Court conducted an

initial review and perceived the petition as time-barred. DE 7 (Order). The Court thus

directed briefing on timeliness and equitable tolling (if applicable). *Id.* Each side

responded. DE 9 (Petitioner's Response); DE 11 (Warden's Response).

Having reviewed the entire record under the applicable standards, the Court

**DISMISSES** the time-barred petition (DE 1) **WITH PREJUDICE** and **DENIES** a

certificate of appealability. The AEDPA statute of limitations bars the petition, and no

colorable claim of innocence spares the filing.

*Factual & Procedural History*

In 2005, the Kentucky Court of Appeals articulated the underlying facts and

history through the conclusion of Elliott's direct appeals:

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812–
13 (6th Cir. 2002) (*per curiam*). Here, Elliott averred to placing the motion in the prison
mailing system on March 19, 2018. DE 1, at 15.

On December 10, 1991, a Laurel County grand jury returned indictments against Elliott and his co-defendant, Allen Cushman, for murder, burglary in the first degree, attempted murder, and robbery in the first degree. Elliott was also indicted as a persistent felony offender in the first degree (PFO I). The charges resulted from the August 21, 1991, murder of Earl L. Cowden and the attempted murder of Cowden's son, Leon. Cushman was tried separately in November 1995, and was convicted on all four counts of the indictment and sentenced to death. However, before Cushman perfected his appeal, and prior to Elliott's trial, he died of natural causes.

After nearly three years of delay brought on by an interlocutory appeal taken by Elliott from the trial court's 1992 denial of his *ex parte* request for the appointment of a specially-trained mitigation investigator, in October 1997, Elliott was tried in the Laurel Circuit Court. At trial, the Commonwealth's case was heavily dependant upon an eyewitness identification made by Cowden's neighbor, Ted Proffitt. On the afternoon of Cowden's murder, Proffitt testified that he was working outside of his house when Mrs. Cowden and her grandson ran out of a field that separated their houses and Mrs. Cowden screamed that someone was breaking into her residence. Proffitt immediately ran to the Cowden residence to investigate and saw both a strange car in the Cowden's driveway and Cushman in the basement of the house. Proffitt then returned home to call the state police.

While waiting for the police to arrive, Proffitt saw Cowden driving down the road towards Cowden's house, so he ran towards the Cowden home in an attempt to stop Cowden before he walked in on the intruders. When Proffitt arrived at the Cowden residence, he heard a loud "dynamite" sound in the house, and, looking through the open front door, saw a man standing over the body of Cowden. While testifying, Proffitt identified Elliott as the man standing over Cowden's body. During cross-examination, Elliott's counsel attempted to impeach Proffitt's testimony by calling to the jury's attention the fact that law enforcement personnel did not ask Proffitt to identify Elliott from a photographic lineup until two years after Cowden's murder, during co-defendant Cushman's trial.

The Commonwealth's case against Elliott was further strengthened by the testimony of one of Elliott's former jail cellmates, Sam Shepard. Shepard testified that he and Elliott became acquainted while playing cards and checkers in jail. Elliott told him that he had met an older man who knew that Cowden kept large sums of cash in his house and they agreed to rob Cowden. Shepard testified that Elliott had told him that things had gone awry during the robbery and that he had put a pillow case over Cowden's head and shot him as he begged for his life. Shepard further testified that Elliott was bragging about his crime and that he showed no remorse.

Moreover, Elliott also told Shepard that he was happy when Cushman died because only Cushman could testify against him.

Elliott was convicted of murder, robbery, burglary, and wanton endangerment. He was sentenced to life without parole for 25 years on the murder conviction, 20 years on the burglary conviction, 20 years on the robbery conviction, and five years on the wanton endangerment conviction. On direct appeal the Supreme Court of Kentucky affirmed Elliott's conviction and sentence by Opinion which was rendered on January 20, 2000, and became final on February 10, 2000.

*Elliott v. Commonwealth*, No. 2004-CA-000065-MR, 2005 WL 3441361, at *1–2 (Ky. Ct. App. Dec. 16, 2005) (footnotes omitted) (hereinafter *Elliott I*).

More recently, the Kentucky Court of Appeals summarized the post-conviction procedural history through the trial court's February 18, 2014, denial of Elliott's third raft of state post-conviction filings:

On March 5, 2001, Elliott brought a collateral challenge pursuant to RCr 11.42. The trial court denied that challenge, and this Court upheld the decision on June 7, 2002. *See* 2001–CA–000751–MR. Elliot also filed a second RCr 11.42 challenge in 2003. This Court affirmed the trial court's denial of that motion in 2004–CA–000065–MR (Ky. App. 2006).

On January 8, 2014, Elliott filed the motion *sub judice* pursuant to RCr 11.42, CR 60.02(f), and CR 60.03. In that motion, Elliott contested the results of a DNA test performed in 1991 on blood found at the crime scene. He further disputed the reliability of multiple eyewitnesses, most notably Ted Proffitt and Willie Mae Cowden.

The trial court ultimately found that there was no merit to Elliott's request for an additional DNA test because the blood was previously tested and was shown to have been the victim's. *See Elliott v. Commonwealth*, 2004–CA–000065–MR, 2005 WL 3441361 (Ky. App. Dec. 16, 2005). The trial court also determined that the reliability of the eyewitnesses who testified against Elliott during his trial had already been litigated.

*Elliott v. Commonwealth*, No. 2014-CA-000715-MR, 2016 WL 354314, at *1 (Ky. Ct. App. Jan. 29, 2016), *reh'g denied* (Nov. 29, 2016), *review denied* (Apr. 19, 2017) (hereinafter *Elliott II*).

Petitioner now pursues § 2254 relief on several state-rejected theories. DE 1, at 7–9. The Court, however, need not address claim merits. The petition is time barred, and the show cause response includes no credible actual innocence claim (or any other basis to save the tardy filing).

*AEDPA Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) subjects section § 2254 petitions to a one-year limitation period. 28 U.S.C. § 2244(d). Specifically, the statute provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.* As explained below, the record clearly establishes (and Elliott does not dispute) the petition's untimeliness under § 2244(d).

4

*Timeliness Calculation*

Elliott states that the date of the underlying judgment and sentencing was October 1997.[2] DE 1, at 1. He appealed, and the Kentucky Supreme Court affirmed on January 20, 2000. The record reflects, DE 1, at 3, (and the Court's research revealed) no petition to the United States Supreme Court for a writ of certiorari. Elliott's judgment thus became final upon passage of the 90-day window to so petition—here, on April 19, 2000. *See* Sup. Ct. R. 13(1), (3); *Jimenez v. Quarterman*, 129 S. Ct. 681, 685 (2009) ("[A] conviction becomes final when 'the time for filing a certiorari petition expires.'").

Two-hundred and sixty-one days then passed until Elliott filed a state RCr 11.42 post-conviction motion on January 5, 2001. *See Elliott I*, at *2. The trial court denied the motion on March 5, 2001, and Elliott appealed. *See id.* The Kentucky Court of Appeals affirmed 11.42 denial on June 7, 2002. *See id.* The Kentucky Supreme Court denied discretionary review on April 17, 2003. *See Elliott v. Commonwealth*, No. 2002-SC-000555, Docket No. 6 (Ky. Apr. 17, 2003).

Thirty-five more days preceded Elliott's second RCr 11.42 motion, filed May 22, 2003. The trial court denied the motion on October 13, 2003, and denied a motion to alter or amend on December 3, 2003. *See Elliott I*, at *2. The state appellate court affirmed on December 16, 2005, *id.* at 1, and the state high court denied discretionary review on May 10, 2006. *See Elliott v. Commonwealth*, No. 2006-SC-000009, Docket No. 34 (Ky. May 10, 2006).

Over seven years then passed before Elliott filed his third RCr 11.42 motion (along with CR 60.02(f), and 60.03 motions), on January 8, 2014. *Elliott II*, at *1. The

---

[2] The Court notes that Petitioner's attachments include a state court docket sheet listing a December 1, 1997, disposition. DE 1-3, at 1.

trial court denied the motions on February 18, 2014. *Id.* The Kentucky Court of Appeals affirmed, on January 29, 2016, and, on November 29, 2016, denied rehearing. *Id.* The Kentucky Supreme Court denied discretionary review on April 19, 2017. *Id.* Three-hundred and thirty-four days later, Elliott filed the current § 2254 petition, on March 19, 2018.

**Over thirty-four hundred days**[3] ticked off Elliott's AEDPA clock between judgment finality and the instant filing, rendering the current petition time barred under § 2244(d)(1)(A) & (d)(2).[4] Elliott, with his show-cause response, does not dispute the § 2244 untimeliness of his petition.[5] Nor does he pursue equitable tolling. DE 9. Rather, Elliott seeks to pass through the equitable "actual innocence" gateway to overcome the

---

[3] This charitably presumes that each RCr 11.42 effected tolling, a debatable result under § 2244(d)(2). *See* 28 U.S.C. § 2244(d)(2) (limiting tolling to *properly filed* state post-conviction applications). Elliott does not argue his petition was timely under § 2244(d)(1), and even the most generous definition of § 2244(d)(2) tolling would not, by a long shot, save the petition. Accordingly, the Court assumes, but does not decide, for purposes of this Opinion that the state motions were properly filed.

[4] The Court notes that there was an interim federal filing on July 24, 2006, (though it is difficult to tell, a July 19, 2006, prison mailbox date may apply). Petitioner made clear in 2006—and now confirms, DE 1, at 13—that he was not filing a § 2254 petition. *See Elliott v. Commonwealth*, Case No. 6:06-cv-326-DCR-EBA, ECF Nos. 2 (Complaint), 9 (Elliott letter rejecting characterization of his filing as § 2254), and 35 (March 16, 2018, Order). District Judge Reeves recently explained:

> Elliott has now filed a motion to re-characterize his initial Complaint as a habeas petition under 28 U.S.C. § 2254, over twelve years after informing the Court that it was not to be so construed. . . . The Court will honor Elliott's earlier instruction *not* to construe his Complaint as a habeas petition under 28 U.S.C. § 2254, and deny his attempt, twelve years later, to change his mind. Simply put, one failed piece of litigation does not represent a place holder for later actions. Of course, Elliott is free to file a first habeas petition in this case. . . . However, any petition filed at this point likely would be barred by the one-year statute of limitations. 28 U.S.C. § 2244(d)(1).

*Id.* at ECF No. 35. The Court agrees with Judge Reeves's apt summary, and perceives no limitations-period relevance in the 2006 federal filing.

[5] Elliott does not make a § 2244(d)(1)(D) predicate-discovery argument (a sure loser given that he has argued the same facts now for well over a decade).

expired AEDPA limitations period. *Id.*; *see McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations.").

The Court has carefully reviewed the filings. Elliott's actual innocence claim, on this record and under the proper standards, is wholly meritless.

*Actual Innocence*

"[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding" a time bar. *McQuiggin*, 133 S. Ct. at 1931. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 113 S. Ct. 853, 862 (1993) (internal citation omitted). A petitioner claiming actual innocence must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Cleveland v. Bradshaw*, 693 F.3d 626, 632–33 (6th Cir. 2012). The standard is demanding:

> The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *McQuiggin*, 569 U.S. at 386 (alteration in original) (quoting *Schlup* [*v. Delo*, 115 S. Ct. 851, 868 (1995)]).

*Adams v. Haviland*, No. 17-4145, 2018 WL 2057494, at *2 (6th Cir. Apr. 16, 2018).

Elliott's responsive brief mostly recites *McQuiggin*'s (and other courts') elucidation of the actual innocence standard. DE 9, at 2–7. Petitioner devotes minimal space to the "(2)" pieces of evidence he touts as innocence proof. *Id.* at 7. First, Elliott advances a theory based on new state laws. DE 9, at 8. The Court readily dispenses with this argument; "'actual innocence' means factual innocence[.]" *Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998). Elliott entirely fails to explain how Kentucky evidence-testing laws allegedly passed in "2013 . . . then 2017-2018" constitute evidence that he did not commit the 1991 murder (or any of his other crimes). DE 9, at 8. The theory, targeting evolution in state DNA testing protocols, falls outside the parameters of the actual innocence rubric.

The other "evidence" Elliott cites is blood from the crime scene. Petitioner has focused multiple legal sorties on blood from the site of the Cowden murder. He persists in suggesting that there may be exculpatory evidence in the form of untested blood attributable to an unknown third-person.

There are several reasons this gambit fails. First, the Kentucky courts have conclusively adjudicated the issue, as a matter of fact. Authorities, as a result of prior Elliott litigation, did test the blood, and the results matched the victim. *See Elliott I*, 2005 WL 3441361, at *4 n.20 ("This Court granted a writ of prohibition. The blood was eventually tested and it matched the victim."). Indeed, the Otto Affidavit Elliott continues to reference (DE 9, at 3; DE 1-4, at 25–26) contributed to the decision to test; the analysis occurred and the evidence matched victim Cowden. Many years later, Elliott tried to secure re-testing; Kentucky refused. *See Elliott II*, 2016 WL 354314, at *1 (affirming trial court finding "that there was no merit to Elliott's request for an additional DNA test

because the blood was previously tested and was shown to have been the victim's"); *Id.* at *3 ("Elliott is requesting a DNA test on blood that has already been tested."). The Otto Affidavit predates the testing. As to the quoted Detective at least, that affidavit clearly is hearsay.[6] In any event, the later Kentucky appellate decisions foreclose the notion of untested blood. Unequivocally, the Kentucky Court of Appeals has twice found the blood tested and indicative of the victim. Elliott offers no contrary proof and puts nothing else before the Court. His testing predicate is contrary to the record and invalid.

Further, blood from the victim—and that is all the pertinent record shows—does not in any way meet the *Schlup* standard. Although the sampling may have been "new," in terms of not previously presented, the information certainly is not exculpatory and does not call into doubt the jury's decision. Indeed, more physical evidence of the known blood shed at the murder scene would simply confirm the story and not exonerate Elliot. *See Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) ("[T]o qualify as new evidence of actual innocence, the evidence must be material, not merely cumulative or impeaching." (internal citations and quotation marks omitted)).[7]

---

[6] The Court recognizes that the actual innocence inquiry is not bounded by "rules of admissibility that would govern at trial." *Schlup*, 115 S. Ct. 851, at 868. Nonetheless, the Court must also give "due regard to any unreliability" of proposed evidence. *Id.* at 867. Hearsay is inherently unreliable. *Lee v. Illinois*, 106 S. Ct. 2056, 2063 (1986) (Hearsay evidence that "does not fall within a firmly rooted hearsay exception [is] . . . presumptively unreliable[.]" (internal quotation marks omitted)). The Court, here, notes the affidavit's attributions as hearsay for reliability, rather than admissibility, purposes. The ultimate testing results, directly contrary to the alleged hearsay statements, here confirm the unreliability that hearsay doctrine presumes.

[7] *Goble v. Taylor*, No. CIV. 14-58-ART-REW, 2015 WL 770389, at *4–5 (E.D. Ky. Feb. 19, 2015) ("Goble cannot enter the actual-innocence gateway for one simple reason: he has no new evidence. . . . [T]he gateway requires new evidence.").

The Kentucky courts expertly catalogued the strong proof of guilt, which included an eyewitness and a later jailhouse confession. Considering the blood samples here would, at most, be neutral relative to the identity of the killer. As such, the evidence hardly suggests that "no juror, acting reasonably, would have voted to find [Elliott] guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 386 (quoting *Schlup*, 115 S. Ct. at 868).

The Court rejects Elliott's petition as untimely on its face and ineligible for the slender actual-innocence exception.

## III. CONCLUSION

Elliott filed a facially untimely § 2254 petition. Tolling does not preserve the petition (and Elliott does not argue for traditional equitable tolling application). Petitioner's actual innocence claim is wholly incredible and insufficient to open the *McQuiggin* gateway as a means to overcome the time bar.

For the reasons stated, the Court **DISMISSES** the time-barred petition (DE 1) **WITH PREJUDICE** and **DENIES** issuance of a certificate of appealability.[8] The Court will enter a separate Judgment.

This the 15th day of July, 2018.

---

[8] The Court denies issuance of a certificate because the timeliness result is not, on this record, fairly debatable, for all the reasons explained above. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (requiring a petitioner to demonstrate, when a court dismisses on procedural grounds, that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling").



Signed By:

*Robert E. Wier*

**United States District Judge**